IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL J. FORD, individually and on
behalf of a class of similarly situated persons,

Plaintiff,

v.

PROGRESSIVE SPECIALTY
INSURANCE COMPANY,

Defendant.

CIVIL ACTION
NO. 21-4147

## OPINION

**Slomsky, J.**                                                    **March 5, 2025**

**I.    INTRODUCTION**.................................................................................................... 3

**II.   BACKGROUND** ..................................................................................................... 5

   A.    Facts ................................................................................................................. 5

   B.    Relevant Law.................................................................................................... 7

   C.    Procedural History........................................................................................... 13

      1.    Complaint, Removal, and Dismissal of Certain Counts............................... 13

      2.    Extensive Discovery Was Allowed on Class Certification.......................... 15

      3.    Latest Procedural Matters.......................................................................... 18

**III.  STANDARD OF REVIEW**.......................................................................... 19

**IV.   ANALYSIS**.................................................................................................... 22

   A.    Stacking Waiver and Household/Regular-Use Exclusion in This Case ......................... 22

B.    Whether the Liability Issue Should Be Certified as a Class Action ............................... 22

C.    Federal Rule of Civil Procedure 23(a): Class Action Prerequisites .............................. 24

    1.    Rule 23(a)(1):  Numerosity Is Not Satisfied ................................................. 24

        a.    Parties Disagree on the Number of Potential Members ........................... 25

        b.    Considering the Liability Issue Plaintiff Wants to Certify,
             Defendant's Number of Class Members Is More Realistic .................................... 26

        c.    Joinder Is Practical With a Small Number of Plaintiffs ........................... 28

    2.    Rule 23(a)(2):  Commonality Is Not Satisfied ........................................................ 29

    3.    Rule 23(a)(3):  Typicality Is Not Satisfied ................................................. 31

    4.    Rule 23(a)(4):  Adequacy Is Not Satisfied ................................................. 33

D.    Federal Rule of Civil Procedure 23(b)(3) Is Not Satisfied on the Liability Issue .......... 34

    1.    Predominance: Common Questions of Fact and Law Do Not Predominate
        Over Questions Affecting Individual Members ........................................................ 35

        a.    This Case Does Not Turn on Interpreting Form Language ..................................... 36

        b.    Individualized Claims and Defenses Complicate the Liability Issue .................... 37

    2.    Superiority:  A Class Action Is Not a Superior Method of Litigating This Case ........ 40

E.    Application of the <u>Gates</u> Factors Shows an Issue Class Is Inappropriate ........................ 42

V.    **CONCLUSION** ................................................................................................................. 45

## I.      INTRODUCTION

This case arises from a dispute over benefits Plaintiff Michael J. Ford ("Plaintiff") believed he had under his auto insurance policy (the "Progressive Specialty Policy") issued by Defendant Progressive Specialty Insurance Company ("Defendant" or "Progressive").  Plaintiff, riding his motorcycle, collided with a car on Route 113 near Deerfield Place in Bucks County, Pennsylvania, on August 13, 2020.  When the payments from the company insuring the driver of the car and from Plaintiff's own insurance company insuring him and his motorcycle[1] were not enough to compensate him for his injuries, Plaintiff filed a claim with Defendant seeking recovery of underinsured motorist benefits pursuant a separate policy he had purchased from Defendant insuring two automobiles.[2]  Defendant denied the claim.  Plaintiff then filed, individually, and on behalf of similarly situated persons, this case essentially asserting that the denial of the underinsured motorist benefit under the Progressive Specialty Policy was a breach of contract

---

[1]    Plaintiff's first claim was made under a different policy, issued by Progressive Preferred Insurance Company (the "Progressive Motorcycle Policy"), which insured his motorcycle. (See Doc. No. 1-1, or "Compl." at ¶¶ 14–17.)  The policy issued by Defendant, the "Progressive Specialty Policy," insured two of Plaintiff's household vehicles, a Volkswagen Beetle and Chevrolet Volt, and is the policy at issue in this case.  It is also referred to in this Opinion as the "Progressive Auto Policy" or simply the "Policy."  (See id.)  The Policy lists Michael J. Ford as "First Named insured," Valerie S. Ford as "Named insured," and Emma Ford as "Good Student."  (See id. at 38–39, Ex. "A.")

[2]    Underinsured or uninsured motorist coverage ("UI/UIM") protects the policy owner if they file a claim against a driver without insurance or who does not have enough coverage to pay for damages.  The policy holder may then get a payment from his own insurance company for the difference in damages.  What is uninsured motorist coverage?, Progressive, https://www.progressive.com/answers/uninsured-motorist-insurance.

pursuant to Pennsylvania Supreme Court decision <u>Donovan v. State Farm</u>, 256 A.3d 1145 (Pa. 2021).[3]  The Progressive Specialty Policy is the contract that was allegedly breached.[4]

Before the Court is Plaintiff's Motion for Class Certification (Doc. No. 75) on Count II of the Complaint, which is essentially a breach of contract claim.[5]  He seeks to certify a class on only the issue of liability, leaving the adjudication of class members' individual damages for subsequent proceedings.  Liability in this case will turn on whether Defendant breached the automobile policy it issued to Plaintiff and other potential class members.  (<u>See</u> Doc. No. 75-1 at 1.)  Plaintiff asserts that the requirements of Federal Rules of Procedure 23(a) and 23(b)(3)[6] are met, and the Court

---

[3]   The holding in <u>Donovan v. State Farm</u>, 256 A.3d 1145 (Pa. 2021) is discussed in detail below.

[4]   In Pennsylvania, breach of contract has three elements: (1) the existence of a contract, (2) a breach of the contract, and (3) resulting damage.  <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.</u>, 137 A.3d 1247, 1258 (2016).  Plaintiff is seeking to certify this case as a "liability-only" class action, focusing solely on element (2) and whether Progressive breached the Progressive Specialty Policy and was therefore liable under the circumstances.  Individual trials for damages would occur afterward.  The first element, the existence of a contract, is not in dispute, and, as noted, the damages would be resolved in later proceedings.  (<u>See</u> Doc. No. 75-1 at 12–13, n. 6.)

[5]   The Complaint alleges:

> 151. The defendant, Progressive Specialty, has breached the terms, agreements, promises and provisions of the Progressive Auto Policy by failing to make payment of underinsured motorist benefits to the plaintiff, Michael J. Ford.

> 152. The defendant, Progressive Specialty, has breached the terms, agreements, promises and provisions of each policy of insurance under which each member of the putative class has made claim for recovery of uninsured and/or underinsured motorist benefits by failing to make payment of the uninsured and/or underinsured motorist benefits to each member of the class.

(Doc. No. 1-1 at 30.)  Defendant denies the allegations contained in paragraphs 151 and 152 of the Complaint.  (Doc. No. 22 at 36.)

[6]   The provisions of Fed. R. Civ. P. 23 are set forth below.

should therefore certify the class for purposes of determining liability only.  (Id.)  Plaintiff defines

the class as:

> All individuals who are named insureds or insureds under policies issued in Pennsylvania by Progressive Insurance Specialty Company, who were injured in motor vehicle accidents as a result of the negligence of an uninsured [motorist] ("UM") or an underinsured motorist ("UIM") but who were denied uninsured and/or underinsured motorist benefits by reason of:  (a) the unstacked coverage provided by the Policy; and/or (b) the [household/regular-use] exclusion.

(Doc. No. 75-1 at 13.)

For the following reasons, the Court will deny the Motion for Class Certification (Doc. No.

75) on the issue of liability.[7]

## II.    BACKGROUND

### A.    Facts

On August 13, 2020, Plaintiff was riding his motorcycle when it collided with a car driven

by Steven A. Johnson ("Johnson").  (Doc. No. 1-1, "Complaint" or "Compl." at ¶ 6.)  Plaintiff

avers that Johnson, who faced criminal charges, was intoxicated at the time of the collision.  (Id.

at ¶ 8.)  Plaintiff claims he suffered "serious and permanent" injuries caused by Johnson's

negligence.  (Id. at ¶¶ 9, 10.)

Plaintiff filed a tort action against Johnson and recovered from Johnson's insurer the

$15,000 limit of liability coverage.  (Id. at ¶ 19.)  At the time of the accident, Plaintiff had two of

his own insurance policies.  (See id. at ¶¶ 14–17.)  The first policy, issued by Progressive Preferred

Insurance Company (the "Progressive Preferred Policy" or the "Progressive Motorcycle Policy"),

insured him and his motorcycle; the second policy, issued by Defendant Progressive Specialty

---

[7]    This kind of class action is permissible under Fed. R. Civ. P. 23(c)(4), which provides: "Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  Here, Plaintiff seeks to certify an "issue class," the particular issue being liability under the Policy.

Insurance Company (the "Progressive Specialty Policy" or the "Progressive Auto Policy"), insured him and two other household vehicles.  (See id.)  After the accident, the Progressive Motorcycle Policy paid Plaintiff the $25,000 limit of underinsured motorist benefits under the policy.  (Id. at ¶ 23.)  According to Plaintiff, since the limits of liability coverage issued by Johnson's insurance company and the Progressive Motorcycle Policy were insufficient to compensate Plaintiff for his injuries, he filed a claim with Defendant for underinsured benefits under the Progressive Specialty Policy.  (See id. at ¶¶ 24, 25.)

On February 23, 2021, Defendant denied the claim and declined to pay any underinsured benefits, asserting that Plaintiff waived inter-policy "stacking" on the Progressive Specialty Policy by signing a waiver.  According to the Complaint:

> 26.  Following receipt of the claim for recovery of underinsured motorist benefits under the Progressive Auto Policy, the defendant, Progressive Specialty, by email dated February 23, 2021, denied and disclaimed the claim on the basis that: (a) the Progressive Auto Policy did not provide stacked underinsured motorist coverage; and (b) the [existence of the] household/regular use exclusion. A true and correct copy of the February 23, 2021 email is attached hereto as Exhibit "B."[8]

(See id. at ¶ 26.)

The "stacking" waiver form, provided by Defendant Progressive Specialty Insurance Company and signed by Plaintiff on September 26, 2019, is taken directly from 75 Pa. Cons. Stat. § 1738(d), a provision of the Pennsylvania Motor Vehicle Financial Responsibility Law (the "MVFR").  Under the heading "Underinsured Coverage Limits," the waiver states:

> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy.  I knowingly and voluntarily reject the

---

[8]    As noted previously, the Progressive Specialty Policy, issued by Defendant, is also referred to as the Progressive Auto Policy.

stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

(Compl. at 81, Ex. "C"; 75 Pa. Cons. Stat. § 1738(d).)

"Stacking," as it is relevant here, refers to combining automobile insurance coverage of two policies within one household. (See Doc. No. 75-1 at 10–11.) "Intra-policy stacking" of uninsured or underinsured motorist ("UM/UIM") benefits "refers to the multiplication of the limits of UIM coverage under a single automobile insurance policy by the number of vehicles insured by that policy." State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). "Inter-policy" stacking "involves the cumulation of the coverage limits from separate insurance policies." Id. at 89 n.4. This case involves inter-policy stacking.

Here, Plaintiff received the $25,000 limit for underinsured motorists from his Progressive Motorcycle Policy and then attempted to "stack" by getting paid from the Policy issued by Defendant Progressive Specialty Insurance Company, which insured two automobiles and named Plaintiff as the "First Named insured." (See Doc. No. 75-1 at 10–11, 36.) Contrary to Defendant's position, Plaintiff claims that nothing in the language of the Progressive Specialty Policy bars recovery under these circumstances, including the statutorily mandated stacking waiver. (Compl. at ¶ 28.) The parties also disagree as to whether the Policy's household/regular-use exclusion is applicable. (See id. at ¶ 26.) Such an exclusion essentially bars coverage for injuries sustained in an accident by a driver while driving a vehicle he owns that is not insured under the insurance policy. In this case, that vehicle would be the motorcycle. See Donovan, 256 A.3d at 1148.

## B.    Relevant Law

On August 17, 2021, the Pennsylvania Supreme Court decided Donovan v. State Farm, in which the plaintiff was injured when he was driving his motorcycle and it collided with an underinsured vehicle. 256 A.3d 1146, 1147. After filing claims with two insurance companies,

the insurer of the underinsured vehicle and the insurer of the motorcycle, and recovering the limits

of coverage on both claims, he believed that the total was inadequate to compensate him for his

injuries and sought to recover underinsured benefits from his mother's insurance policy.  Id.  But

his mother had signed the stacking waiver referred to in 75 Pa. Cons. Stat. §1738(d).[9]  His mother's

policy also had a household/regular-use exclusion.[10]  Id. at 1148.  The plaintiff claimed that the

---

[9]    75 Pa. Cons. Stat. §1738 provides:

(a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.

(b) Waiver.—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.

(c) More than one vehicle.—Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

(d) Forms.—

(1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the [form language provided above under the heading "Underinsured Coverage Limits."]

75 Pa. Cons. Stat. §1738.

[10]    Generally, the household vehicle exclusion is a clause in an auto insurance policy that prevents an insured from getting certain benefits if he is hurt while driving a vehicle he owns but that is not insured under the policy from which he seeks coverage.  See Does car insurance cover the car or driver?, PROGRESSIVE, https://www.progressive.com/answers/does-insurance-follow-the-car-or-driver.  In Donovan, however, the household vehicle exclusion stated: "There is no

§1738(d) waiver was not a knowing waiver of inter-policy stacking when policies insure multiple vehicles. <u>Id</u>. at 1156. The court held that the stacking waiver by its terms applied to the vehicle's insured under the mother's policy but was invalid as applied to inter-policy stacking for a multi-vehicle policy such as the mother's policy. <u>Id</u>. at 1147. The court in <u>Donovan</u> also held that the household vehicle exclusion in the policy was unenforceable absent a valid waiver of inter-policy stacking. <u>Id</u>. at 1147. <u>Donovan</u> found that policy holders can file UM/UIM motorist coverage claims with multiple insurance policies for the same accident notwithstanding the waiver of stacking, so long as the policy was a multi-vehicle policy. <u>See id.</u> at 1157–59.

Prior to <u>Donovan</u>, the Pennsylvania Supreme Court held in <u>Gallagher v. GEICO Indem.</u> that the household vehicle exclusion as applied to the facts in that case was unenforceable as a <u>de facto</u> waiver of stacking as a matter of law because the exclusion violated 75 Pa. Cons. Stat. § 1738(d) (the "MVFR"). 201 A.3d 131, 138 (2019). In <u>Gallagher</u>, the plaintiff chose to pay for stacked coverage and did not sign a waiver. <u>Id</u>. at 133.

Prior to <u>Gallagher</u>, the Pennsylvania Supreme Court decided <u>Craley v. State Farm Fire & Cas. Co.</u>, 895 A.2d 530 (2006). In <u>Craley</u>, the plaintiff was driving her own car insured by the defendant when she was killed by an uninsured driver whose negligence was found to be the cause of the accident. <u>Id</u>. at 533. When the claims exceeded the limits of the benefits under her policy, her estate sought UM/UIM benefits under her husband's State Farm policy (a resident relative), but the policy only insured one car. <u>Id</u>. State Farm argued the husband had waived UM/UIM

---

coverage for an insured who sustains bodily injury while occupying a motor vehicle owned by you or any resident relative if it is not your car or a newly acquired car." <u>Donovan</u>, 256 A.3d at 1148. Under the household vehicle exclusion in the Policy in this case, coverage did not apply to "a motor vehicle that is owned by or available for the regular use of you, a relative, or a rated resident." (Compl., Ex. A at 56.)

stacking by signing the form with the 75 Pa. Cons. Stat. § 1738(d) language provided above and

denied the claim.  Id. at 533–34.  The Pennsylvania Supreme Court upheld State Farm's denial of

coverage, concluding that the husband's waiver of inter-policy stacking was knowing because he

signed the waiver understanding that his premiums were reduced by nature of him reducing his

coverage in that way.  Id. at 541–42.  The court reasoned that the husband "could not have thought

he was receiving a reduced premium for waiving intra-policy stacking . . . with only one vehicle

on the policy."  Id. at 542.  The court essentially held that an insured who waives UM/UIM stacking

on a policy insuring one vehicle is necessarily waiving inter-policy stacking.  See id.  Because

Craley involved only one vehicle, it is distinguishable from this case.

　　　Based upon Gallagher and Craley, the Donovan court, in a case with facts similar to the

case at hand, held that the language of the § 1738(d) waiver form:

> . . . informs insureds that they are waiving intra-policy stacking as they will not be
> provided the 'sum of the limits for each motor vehicle under the policy.' It does not,
> however, alert insureds that they are waiving the ability to stack the coverage for
> which premiums were paid in "this policy" on top of the coverage available under
> a separate policy.

Donovan 256 A.3d at 1158 (emphasis added).  In sum, the Donovan court held that intra-policy

stacking, which means combining coverages for multiple vehicles on the same policy was covered

by the statutory waiver form, but that the waiver did not operate to waive inter-policy stacking,

which means combining of the coverages available for vehicles insured on separate policies within

a household.  See id. at 1149.  As to the household vehicle exclusion, the court held:

> Whether the insured did not sign a waiver, as in Gallagher, or signed a deficient
> waiver as to inter-policy stacking, as in [Donovan], the result is the same:  the policy
> defaults to inter-policy stacking of UM/UIM coverage. In either case, the household
> vehicle exclusion cannot operate as a de facto waiver of inter-policy stacking
> because it fails to provide the insured with a knowing waiver of that coverage.

Id. at 1160.

Two other Philadelphia Supreme Court cases decided after the Complaint was filed in this case on or about August 18, 2021, help clarify the boundaries of claims involving household exclusions and stacking waivers. These cases are important because the matter before the Court concerns not only Plaintiff's claim under the Policy, but also whether a class should be certified for purposes of Defendant's liability for denying coverage under the auto insurance policies.

In Erie Ins. Exch. v. Mione, Mione was driving a motorcycle, and the Progressive policy insuring it did not have UM/UIM coverage. 289 A.3d 524, 525 (Pa. 2023). Mione submitted UM/UIM claims under two Erie auto insurance policies, each insuring only one vehicle: one that insured the car he shared with his wife, which did include UM/UIM coverage with stacking, and one that insured his adult daughter's car. Id. Erie denied UM/UIM coverage based on the fact that both policies had household vehicle exclusions barring UM/UIM coverage for injuries sustained while operating a household vehicle not listed on the policies. Id. at 525–26. The court upheld Erie's denial of coverage, holding that the trial court properly enforced the exclusions. Id. at 532. The court reasoned that if the exclusions were ignored on these facts, "one could waive the (expensive) UM/UIM coverage on one's [own] motorcycle policy with one insurer, knowing full well that one has ample UM/UIM coverage on another (less expensive) household automobile policy with another insurer." Id. at 531.

Next, in Rush v. Erie Ins. Exch., the plaintiff was driving his work vehicle that he did not own but was insured under a policy that had UM/UIM coverage. 308 A.3d 780, 782 (Pa. 2024). Two drivers crashed into him. Id. The plaintiff submitted a claim under two Erie policies he and his wife had on their three vehicles, which had UM/UIM coverage and "regular-use" exclusions. Id. While a household exclusion generally applies to vehicles shared by family members, a regular-use exclusion generally applies to a vehicle regularly used by the insured that he does not

own, such as a vehicle he uses for work that is not listed on his policy. Those policies did not include the work vehicle. Id. The court upheld Erie's denial of coverage, finding in that situation the regular-use exclusion is valid and enforceable. Id. at 802.[11]

In sum, the law on stacking can be synthesized through the holdings in Craley (2006), Gallagher (2019), Donovan (2021), Mione (2023), and Rush (2024) as follows. UM/UIM coverage can be stacked under certain circumstances. If a plaintiff paid for stacked coverage on his insurance policies—one policy for a motorcycle and one policy for his two other vehicles—and did not sign the statutory stacking waiver, the household/regular-use exclusion under the policy is unenforceable, meaning the coverage can be stacked. If a plaintiff signed the waiver, he may not combine coverage for multiple vehicles on the same policy (intra-policy stacking is waived), but he may combine coverage for vehicles insured on separate policies (inter-policy stacking is not waived). In this situation, the household/regular-use exclusion is invalid. If a plaintiff signed the waiver, but the policy he seeks to stack insures only one vehicle, coverage cannot be stacked because under his own policy he paid less of a premium by waiving stacking, and he should not get the benefit of stacking under his other policy.

Furthermore, where a plaintiff has two policies with household/regular-use exclusions—one insuring the vehicle in the accident and one insuring another household member's vehicle—those exclusions are enforceable, and the coverage may not be stacked. Finally, where a plaintiff's accident occurs in his work vehicle, which is not listed on either of his two insurance policies

---

[11] While Plaintiff in this case was not driving a work vehicle, in several claims identified by Plaintiff as potential class members, the plaintiffs were driving a vehicle that they did not own, such as a work vehicle, that was available for their regular use and insured under a policy that had UM/UIM coverage that did not cover the vehicle. (See Doc. No. 88 at ¶¶ 4–6.)

covering multiple vehicles shared by household members with UM/UIM coverage and regular-use exclusions, the regular-use exclusion is enforceable, and the coverage may not be stacked.

As noted, all these cases are particularly relevant here where the matter before this Court involves whether to certify a group of insureds who may fall within the <u>Donovan</u> fact pattern or the fact pattern present in the other cases.  <u>Donovan</u> was decided on August 17, 2021, the day before the Complaint was filed in this case.  While the parties agree that Plaintiff's situation is similar to the fact pattern in <u>Donovan</u>, and its holding would resolve the question of whether Progressive were liable where the facts clearly mirror those in <u>Donovan</u>, the <u>Mione</u> and <u>Rush</u> cases were decided after <u>Craley</u>, <u>Gallagher</u>, and <u>Donovan</u> and after the Complaint was filed in this case. (<u>See</u> Doc. No. 86 at 16; Doc. No. 75-1 at 11.)  Notably, <u>Rush</u> was decided thirteen (13) days after Plaintiff moved to certify the class.  Thus, the viability of what may have been more of a potential class at one time has been affected by the subsequent rulings in <u>Mione</u> and <u>Rush</u>.  Rigorous analysis on whether to certify the class on the liability issue requires consideration of the fact patterns in all these cases.

### C.    Procedural History

#### 1.    Complaint, Removal, and Dismissal of Certain Counts

On or about August 18, 2021, Plaintiff Michael J. Ford filed a Complaint in the Court of Common Pleas of Philadelphia County.  (Doc. No. 1, Notice of Removal.)  On September 20, 2021, this case was removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  (<u>Id.</u>)  Removal was proper because this Court has subject matter jurisdiction on grounds of complete diversity of citizenship and the requisite amount in controversy being met under 28 U.S.C. §1332.[12]  Here,

---

[12]  Federal district courts have original jurisdiction in cases "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States . . . ."  28 U.S.C. § 1332(a)(1).

Plaintiff is a citizen of Pennsylvania and Defendant is a corporation organized under the laws of Ohio with a principal place of business in Ohio. (Id.) Moreover, the limit of liability for underinsured motorist coverage under the Policy is $250,000. (Compl. at ¶¶ 17, 58, 104.) Thus, the amount in controversy exceeds the sum or value of $75,000, the threshold amount under 28 U.S.C. § 1332(a)(1). Therefore, complete diversity of citizenship jurisdiction exists.

The Complaint seeks: a declaration that the Progressive Specialty Policy provides uninsured and/or underinsured motorist ("UM/UIM") benefits to Plaintiff and class members (Count I); damages for breach of contract for amounts allegedly due Plaintiff and class members under the Policy (Count II); and to enjoin Progressive from asserting the unstacked nature of coverage and/or the household/regular-use exclusion as a defense to underinsured motorist claims under the Policy (Count III).

On March 2, 2022, this Court issued an Opinion and Order granting Defendant's Motion to Dismiss Count I of the Complaint seeking a declaratory judgment because it was duplicative of the breach of contract claim. (Doc. Nos. 20, 21.) The Court denied Defendant's Motion to Dismiss Count II of the Complaint alleging breach of contract because the Donovan decision applied retroactively.[13] (Doc. No. 20 at 12–14.) Plaintiff withdrew Count III for injunctive relief during the hearing on Defendant's Motion to Dismiss. (See Doc. No. 14 at 4–5.) On March 23, 2022, Defendant filed an Answer to Count II (Doc. No. 22).[14]

---

[13] This Court held that the Donovan decision applies retroactively. See Ford v. Progressive Specialty Ins. Co., 588 F. Supp. 3d 589 (E.D. Pa. 2022) (predicting that the Pennsylvania Supreme Court would hold Donovan is retroactive.); see also Dillinger v. Caterpillar, Inc., 959 F.2d 430, 434 n.11 (3d Cir. 1992) (noting that in cases in federal court based on diversity of citizenship that involve Pennsylvania law, federal courts sometimes decide a case by predicting how the Supreme Court of Pennsylvania would decide the case).

[14] In an Order dated July 20, 2022 (Doc. No. 32), the Court denied Plaintiff's Partial Motion for Summary Judgment (Doc. No. 24) without prejudice. The Motion sought a declaration that

### 2.    Extensive Discovery Was Allowed on Class Certification

Deadlines were extended in this case to allow for extensive discovery on class certification. (See Doc. Nos. 44, 51, 66, 71, 74.)  During discovery, Plaintiff's counsel filed a Motion to Compel Full and Complete Answers to Class Action Interrogatories, requesting numerous files that he believed would demonstrate that certain claims would parallel both Donovan and Plaintiff's situation and likely resolve the issue of liability.  (See generally Doc. No. 34.)  In an Order dated November 29, 2022, this Court ordered Defendant to provide the following:

> full and complete answers in writing to the Interrogatories listed in Plaintiff's Motion [to Compel]. In addition, of the 2,189 claim files in which Defendant denied underinsured and/or uninsured motorist benefits to its insureds under its automobile policy, Defendant shall identify for Plaintiff the files in which benefits were denied under Exclusion 1.b. of [Part III of] the policy [the household/regular-use exclusion]. Defendant also shall make available to Plaintiff upon his request the electronic claim files for the claims in which coverage was denied under Exclusion 1.b.

(Doc. No. 47 at 1.)

On January 16, 2024, Plaintiff filed a Motion for Class Certification (Doc. No. 75).  To support his contention that numerous plaintiffs should be part of the class, Plaintiff attached declarations from Plaintiff's counsel showing the methodology used to identify 98 class members. (See Doc. Nos. 75-4, 75-5, 75-6, 75-7.)  On September 16, 2024, Progressive submitted a Declaration from Defendant's counsel, Kymberly Kochis, Esquire, stating that while the methodology in the declarations of Plaintiff's counsel did not adequately demonstrate 98 potential class members, "Progressive requested that Plaintiff identify the 98 claims that Plaintiff contends meet the class definition in this action."  (Doc. No. 86-5 the "K. Kochis Declaration" at ¶¶ 6–17.) Counsel for Plaintiff eventually sent defense counsel an email stating that Plaintiff conceded that

---

the household exclusion in the Progressive Specialty Policy was invalid and did not bar Plaintiff's uninsured motorist claim.  The Motion was premature because there had been no discovery at that time.  (See Doc. No. 32.)

there were 56 unique claims that fit the class definition and another 12 claims for which Plaintiff's counsel "did not have sufficient information to determine whether these claims were, in fact, in the class or not." (See id. (quoting Doc. No. 86-6, Ex. "1").)

On September 16, 2024, Defendant filed the Declaration of Brian Haeflein, a 30-year employee of Progressive, who reviewed Progressive's records for this case for all claims by those identified by Plaintiff involving potential class members. (Doc. No. 88.) Haeflein is Progressive's Supervisor of Loss/Litigation. He states in his declaration:

> 1. My name is Brian Haeflein. I am over 21 years of age, of sound mind, and competent to make this declaration. I have been employed by Progressive Casualty Insurance Company for approximately thirty years, and my current title is Supervisor Large Loss/Litigation. I give this declaration based on my personal knowledge and review of the records maintained by Progressive in the regular course of business.
>
> 2. I reviewed the claim notes, claim systems and related documents as necessary for certain Progressive Specialty Insurance Company ("Progressive") uninsured and/or underinsured motorist ("UM/UIM") claims that were identified by Plaintiff as class member claims ("Class Members") or claims where Plaintiff's counsel did not have enough information to determine whether the insured was in the class ("Possible Class Members"). K. Kochis Declaration [at] ¶¶ 21, 22. The information I reviewed is recorded in Progressive's systems. The information in those systems was recorded at or near the time of the events being recorded, was recorded by individuals with knowledge of the events, and is kept in the course of regularly conducted business activity and as part of Progressive's regular practices.

(Id. at 1.)

Haeflein's review of the files were broken down as follows:

> 4. Below are [7] examples of Class Member/Possible Class Member UM/UIM claims submitted on a Progressive Pennsylvania personal auto policy that were denied or a reservation of rights letter issued in which the accident occurred in a vehicle not listed on the applicable Progressive auto policy ("unlisted vehicle") that the insured did not own and the unlisted vehicle was available for the insured's regular use.
>
> ***

16

[For example, an] insured [was] injured while driving [an] employer's vehicle that the insured did not own, was not listed on the insured Progressive's auto policy and the insured regularly used.

5. Below are [11] examples of Class Member/Possible Class Member UM/UIM claims submitted on a Progressive Pennsylvania personal auto policy that were denied or a reservation of rights letter was issued in which an accident occurred in a vehicle or motorcycle not listed on the applicable Progressive auto policy ("unlisted vehicle") and the unlisted vehicle involved in the accident did not have UM/UIM coverage.

***

[For example, a] [r]elative of [an] insured [was] injured while driving an uninsured motorcycle that did not have UM/UIM coverage and was not listed on the insured's Progressive auto policy.

6. Below are [23] examples of Class Member/Possible Class Member UM/UIM claims that were denied or a reservation of rights letter was issued in which an accident occurred in a vehicle or motorcycle not listed on the applicable Progressive Pennsylvania personal auto policy ("unlisted vehicle") and a UM/UIM claim was submitted relating to the accident on a Progressive auto policy that insured one vehicle and the insured waived UM/UIM stacking on the Progressive auto policy.

***

[For example, an] [i]nsured sustained bodily injury while driving a vehicle not listed on the Progressive auto policy that was regularly available for the insured's use. The insured submitted a UM/UIM stacking claim under the insured's Progressive auto policy, but the insured waived UM/UIM stacking on the auto policy and the auto policy only insured one vehicle from policy inception through the date of loss. Progressive has a signed stacking waiver.

(Id. at ¶¶ 4–6.)

In paragraphs 7 through 23, Haeflein describes different factual scenarios.  For example, in some instances a claim was not denied or was withdrawn,[15] Progressive paid the claimants,[16] the injuries were not severe enough to trigger insurance coverage, the claim was resolved, or the

---

[15]    (See Doc. No. 88 at ¶¶ 7, 8, 9, 12, 13, 16, 17, 19, 20, 21, 22, 23.)  Notably, "UM/UIM coverage does not apply if the insured is at fault for the accident."  (Id. at ¶ 24.)

[16]    (See id. at ¶¶ 9, 10, 15, 16.)

claim was denied under the exclusion for excluded drivers.[17] (Id. at ¶¶ 7–23.) The concluding

paragraph sums up Haeflein's assessment as follows:

> 25.  In order to assess whether a denial or reservation of rights letter should be issued on a UM/UIM stacking claim submitted under a Progressive Pennsylvania auto policy when the vehicle involved in the accident is not listed on the Progressive auto policy (unlisted vehicle), the representatives undertake a fact investigation. For example, the claims representatives, depending on the claim, may investigate, among other things, whether the insured or individual asserting the claim is at fault for the accident, the residency of the individual asserting the claim, if the Progressive personal auto policy has stacked coverage and, if not, whether Progressive has a valid signed stacking waiver, if the Progressive personal auto policy insured more than one vehicle, whether the insured's or individual submitting the claim's injuries are such that the dollar value will trigger the UM/UIM coverage, whether the unlisted vehicle had UM/UIM coverage, whether the unlisted vehicle is a household vehicle, whether other insurance policies apply to the loss and the priority of the various coverages, whether the insured or the individual submitting the claim owned the unlisted vehicle, whether the vehicle was being operated to carry persons or property for a fee and whether the unlisted vehicle was available for the regular use of the insured or individual submitting the claim.

(Id. at ¶ 25.)

### 3.      Latest Procedural Matters

On September 16, 2024, Defendant filed a Response in Opposition to Plaintiff's Motion

for Class Certification (Doc. No. 86). On October 24, 2024, Plaintiff filed a Reply (Doc. No. 95).

On November 6, 2024, a hearing on the Motion for Class Certification (Doc. No. 75) was held

with counsel for the parties. On December 2, 2024, Plaintiff filed a Supplemental Memorandum

in Support of its Motion for Class Certification (Doc. No. 104). On January 3, 2025, Defendant

filed a Supplemental Memorandum in Opposition to Plaintiff's Motion for Class Certification

(Doc. No. 105). Plaintiff's Motion for Class Certification (Doc. No. 86) is now ripe for disposition.

---

[17]  (See id. at ¶ 11, 14, 18.)

III.    **STANDARD OF REVIEW**

In <u>Comcast Corp. v. Behrend</u>, the United States Supreme Court reaffirmed the principles

that must guide a district court's analysis of a class certification motion:

> The class action is "an exception to the usual rule that litigation is conducted by
> and on behalf of the individual named parties only."  To come within the exception,
> a party seeking to maintain a class action "must affirmatively demonstrate his
> compliance" with Rule 23 . . . [A] party must not only "be prepared to prove that
> there are in fact sufficiently numerous parties, common questions of law or fact,"
> typicality of claims or defenses, and adequacy of representation, as required by
> Rule 23(a).  The party must also satisfy through evidentiary proof at least one of
> the provisions of Rule 23(b). The provision at issue here is Rule 23(b)(3), which
> requires a court to find that "the questions of law or fact common to class members
> predominate over any questions affecting only individual members."
>
> Repeatedly, we have emphasized that it "may be necessary for the court to probe
> behind the pleadings before coming to rest on the certification question,' and that
> certification is proper only if 'the trial court is satisfied, after a rigorous analysis,
> that the prerequisites of Rule 23(a) have been satisfied."  Such an analysis will
> frequently entail "overlap with the merits of the plaintiff's underlying claim."

569 U.S. 27, 33–34 (2013) (citing <u>Califano v. Yamasaki</u>, 442 U.S. 682, 700–01 (1979)); <u>Wal-Mart</u>

<u>Stores, Inc. v. Dukes</u>, 564 U.S. 338, 361 (2011) (internal quotation marks and citation omitted)).

Thus, a class certification motion must comply with the requirements of Fed. R. Civ. P. 23, which

provides in part:

> (a) <u>Prerequisites</u>. One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims
> or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of
> the class.
>
> (b) <u>Types of Class Actions</u>. A class action may be maintained if Rule 23(a) is
> satisfied and if:

\*\*\*

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.[18]

(c) <u>Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.</u>

\*\*\*

4) <u>Particular Issues.</u> When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

---

[18] Only Fed. R. Civ. P. 23(b)(3) is relevant here. Although not relevant here, (1) and (2) provide:

<u>Types of Class Actions</u>. A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . .

Fed. R. Civ. P. 23.  In sum, "every putative class action must satisfy [by a preponderance of the evidence] the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)."  Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590–91 (3d Cir. 2012).  And the Third Circuit has held that:

> [A] court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis. Rule 23(c)(4) both imposes a duty on the court to insure that only those questions which are appropriate for class adjudication be certified, and gives it ample power to treat common things in common and to distinguish the distinguishable. The interaction between the requirements for class certification under Rule 23(a) and (b) and the authorization of issue classes under Rule 23(c)(4) is a difficult matter that has generated divergent interpretations among the courts.[19]

Gates v. Rohm & Haas Co., 655 F.3d 255, 272 (3d Cir. 2011) (citing Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 200–01, n. 25 (3d Cir. 2009); Chiang v. Veneman, 385 F.3d 256, 267 (3d Cir.2004) (internal quotation marks and citation omitted)).

In the Third Circuit, issue-class treatment may be given under Rule 23(c)(4) if a case:  (1) satisfies Rule 23(a), (2) fits within one of Rule 23(b)'s categories, and (3) such treatment is appropriate under the Gates factors.  Russell v. Educ. Comm'n for Foreign Med. Graduates, 15 F.4th 259, 262 (3d Cir. 2021) (citing Gates v. Rohm & Haas Co., 655 F.3d 255 (3d Cir. 2011)).[20]

---

[19]  The Seventh Circuit rejected a liability-only class because the need for multiple juries to resolve a single claim would violate the Seventh Amendment right to jury trial.  In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1295 (7th Cir. 1995).  But the Ninth Circuit has held that bifurcation of class issues from individual issues is constitutionally permissible and may be appropriate under facts of particular cases.  Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1232 (9th Cir. 1996).  Because the Court is not certifying the class issue here, there is no need to reach the issue of whether there would be a Seventh Amendment violation in this case.

[20]  Plaintiffs may seek to bring a class action in which "the action may retain its class character only through the adjudication of liability to the class; the members of the class may thereafter be required to come in individually and prove the amounts of their respective claims."  Fed. R. Civ. P. 23, Advisory Committee note of 1966.

IV.    **ANALYSIS**

**A.  Stacking Waiver and Household/Regular-Use Exclusion in This Case**

Plaintiff alleges that the stacking waiver he signed under the Progressive Specialty Policy is invalid because, similar to the facts in <u>Donovan</u>, he did not knowingly waive inter-policy stacking of underinsured motorist benefits when he signed the stacking waiver.  (<u>See</u> Compl. at ¶¶ 66–71.)  He only agreed to waive intra-policy stacking.

The Progressive Specialty Policy contains a household/regular-use exclusion, Exclusion 1.b. of Part III the Policy, which provides in part:

Coverage under this Part III will not apply:

1.  to bodily injuries sustained by any person while using or occupying:
    . . .
        b. a motor vehicle that is owned by or available for the regular use of you, a relative, or a rated resident. This exclusion does not apply to a covered auto that is insured under this Part III.

(Doc. No. 1-1, Ex. A at 56.)  Thus, because inter-policy stacking was not waived by Plaintiff under his Policy, even though he waived intra-policy stacking, the household/regular-use exclusion in his Policy does not bar stacking.  And Defendant concedes that Plaintiff's situation is covered by <u>Donovan</u> and stacking is permitted.  (<u>See</u> Doc. No. 86 at 16.)

**B.  Whether the Liability Issue Should Be Certified as a Class Action**

Plaintiff requests class certification on the issue of liability under <u>Donovan</u> to conserve resources of the parties and the Court and to avoid the need for individual trials, which cost time and money.  (Doc. No. 75-1 at 9.)  Plaintiff further argues that a decision on liability alone "will resolve the question with finality and ensure that all [c]lass members and Progressive are treated uniformly and fairly."  (<u>Id.</u> at 10.)

Defendant counters that issue certification is improper here because instead of potential class members being similarly situated on the issue of liability, potential class members each have

"unique facts and circumstances" that apply to them that would preclude insurance coverage under the <u>Donovan</u> decision. (Doc. No. 86 at 5.) The differing circumstances include: (1) whether Progressive paid the claim, (2) whether the claim was litigated, (3) whether the insured's injuries triggered the UM/UIM coverage, (4) whether the individual asserting the claim is an insured under the policy, (5) whether the insured was at fault for the accident, (6) whether there is another basis for Progressive's denial of coverage and (7) whether Progressive's denial of coverage was appropriate under Pennsylvania law. (<u>Id.</u>) Defendant submits that the variability of these seven factors among potential class members precludes a finding that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(3) and 23(c)(4) are met, and "[n]ot only will the UM/UIM claim of Plaintiff and each putative class member vary significantly, but Progressive's defenses are unique as to each. These individual issues, core to determining Progressive's liability to each class member, preclude a finding that the requirements of Rules 23(a), 23(b)(3) and 23(c)(4) are met." (<u>Id.</u>)

> The class-wide issue here, as defined by Plaintiff is whether:
>
> insureds under policies issued in Pennsylvania by Progressive Insurance Specialty Company, who were injured in motor vehicle accidents as a result of the negligence of an uninsured [motorist] ("UM") or an underinsured motorist ("UIM")…were [wrongfully] denied uninsured and/or underinsured motorist benefits by reason of: (a) the unstacked coverage provided by the Policy; and/or (b) the [household/regular-use] exclusion.

(Doc. No. 75-1 at 13; <u>see</u> Doc. 1-1 at 18.)

But a vigorous analysis under Rule 23 reveals that there are too many variables within and related to this class issue to warrant certification of this issue under Rule 23(c)(4). This proposed class issue is relevant to Plaintiff's claim in Count II of the Complaint: that Defendant breached the insurance policy. But the particular class issue sought to be certified in this case cannot be simplified in a manner that would automatically attach liability to each class member.

### C. Federal Rule of Civil Procedure 23(a): Class Action Prerequisites

The four requirements of Rule 23(a) are referred to as numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23.  These requirements will be discussed individually.

### 1. Rule 23(a)(1): Numerosity Is Not Satisfied

Defendant argues that the realistic number of plaintiffs who could qualify as class members is 8, including Plaintiff.  (See Doc. No. 100 at 34:1-10; see also Doc. No. 86 at 12.)[21]  For this reason, their joinder in this case as plaintiffs would not be impractical, and there is no need to certify an issue class.  (Doc. No. 86 at 12.) Therefore, Defendant argues the numerosity requirement is not satisfied here.[22]  (Id.)

Fed. R. Civ. P. 23(a)(1) requires that a plaintiff seeking class certification must show that "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "There is no minimum number of members needed for a suit to proceed as a class action.  [But in this circuit] 'generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds forty (40), the first prong of Rule 23(a) has been met.'"  Marcus, 687 F.3d at 595 (quoting Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001)).  However, a court's "inquiry into impracticability [of joinder] should be particularly rigorous when the putative class consists of

---

[21]  Defendant states that the number of potential class members is "well less than 10" in its Brief in Opposition to the Motion for Class Certification (Doc. No. 86 at 12) but stated that the number is 8 including Plaintiff at the hearing on the Motion.  (See Doc. No. 100 at 34:1-10.) For purposes of this Opinion, the Court will use the number 8.

[22]  The Order granting Plaintiff's Motion to Compel (Doc. No. 47) noted that Defendant "conced[ed] the numerosity element," but Defendant submits that "even if this were true, it is irrelevant because Plaintiff and Progressive undertook a full review of the potential class claims."  (See Doc. No. 47 at n.1; see also Doc. No. 86 at n. 7.)  After this review, Defendant zealously challenges that Plaintiff has met the numerosity requirement of Rule 23(a)(1).  (See id. at 11–13.)

fewer than forty (40) members." In re Modafinil Antitrust Litig., 837 F.3d 238, 250 (3d Cir. 2016), as amended (Sept. 29, 2016).

### a.    Parties Disagree on the Number of Potential Members

Plaintiff first claimed the class consisted of "at least 98 members." (Doc. No. 75-1 at 15). After reviewing what Plaintiff claims are incomplete log files (with 2,189 insureds) produced by Progressive, Plaintiff changed that number to 68 members. (See Doc. No. 95 at 9; see also Doc. No. 104 at 6.)

Defendant counters that the class only consists of 8 members. (See Doc. No. 100 at 34:1-10; see also Doc. No. 86 at 12.) Defendant submits that Plaintiff's counsel revised his number of class members after reviewing the list of claims submitted for the 68 potential members and divided the list as follows: 56 claims meet the class definition, and12 claims do not meet the class definition because there is insufficient information. (See id; see also Doc. No. 86-5 at 4–6.)

Of the 56 claims, Defendant asserts that Progressive's denial of coverage for at least 36 of the 56 claims, and 5 of the 12 other possible members, was proper under Craley, Mione, or Rush. (Id.) Defendant reaches this conclusion based on the Declaration of Brian Haeflein, the Progressive employee who reviewed Progressive's records for claims made by potential class members from the list of claimants selected by Plaintiff's counsel. From Haeflein's analysis, Defendant asserts that the denials of coverage would likely be affirmed in light of the Pennsylvania Supreme Court cases mentioned above in more than 40 of the claims submitted by potential class members. (Doc. No. 88 at ¶¶ 4–6.) In those Pennsylvania Supreme Court decisions, the denials of UM/UIM coverage were upheld. For example, in several claims, the plaintiff was driving a vehicle that he did not own such as his work vehicle. This vehicle was available for his regular use and insured under a policy that had UM/UIM coverage that did not cover the work vehicle. (See id.) The holding in Rush may now be dispositive in determining Progressive's liability for

25

breach of contract in those cases.  Furthermore, in several other claims, one of two policies held by the insured did not have UM/UIM coverage.  (See id.)  The holding in Mione may now be dispositive in determining whether Progressive breached their insurance contract for that claim.

Next, of the remaining 27 potential members, Defendant claims:  (1) 12 do not meet the class definition because a claim was not denied, instead the insured was at fault or withdrew the claim;[23] (2) in four claims, Progressive paid the claimants;[24] and (3) in one claim, the injuries were not severe enough to trigger insurance coverage, in another the claim was resolved, and in another the claim was denied under the exclusion for excluded drivers.  (Id.)  Thus, the potential class members are now reduced to 8.[25]  (Id.)

### b.    Considering the Liability Issue Plaintiff Wants to Certify, Defendant's Number of Class Members Is More Realistic

Here, it bears repeating that Plaintiff, in his Motion to Certify the Class and his Reply in Support of his Motion to Certify the Class, sought to define the class on the issue of liability for breach of contract as:

> All individuals who are named insureds or insureds under policies issued in Pennsylvania by Progressive Insurance Specialty Company, who were injured in motor vehicle accidents as a result of the negligence of an uninsured [motorist] ("UM") or an underinsured motorist ("UIM") but who were denied uninsured and/or underinsured motorist benefits by reason of:  (a) the unstacked coverage provided by the Policy; and/or (b) the household regular use exclusion.

(Doc. No. 75-1 at 13; Doc. No. 95 at 4 n.2.)

---

[23]    (See id. at ¶¶ 7, 8, 9, 12, 13, 16, 17, 19, 20, 21, 22, 23.)  As noted earlier, "UM/UIM coverage does not apply if the insured is at fault for the accident."  (Id. at ¶ 24.)

[24]    (See id. at ¶¶ 9, 10, 15, 16.)

[25]    (See id. at ¶ 11, 14, 18.)

In his Supplemental Memorandum, however, Plaintiff defined the potential class as people who "but for Progressive's alleged wrongful denial of UM/UIM coverage based on the household/regular use exclusion, would otherwise have been eligible for recovery of UM/UIM benefits."[26]  (Doc. No. 104 at 1.)  Plaintiff emphasized that he is "requesting certification of this breach of contract issue so that class members can be notified that they are <u>eligible</u> to present a claim which can then be considered in a manner determined by the Court (<u>i.e.</u>, by a special master or a subsequent proceeding) in order to determine whether that class member is <u>entitled</u> to any UM/UIM benefits."  (<u>Id.</u> at 2 (emphasis in the original).)  Furthermore, Plaintiff contends that "[i]f the class is not certified, the class members whose claims were wrongfully denied on basis of the household/regular use exclusion will never be so advised."  (<u>Id.</u> at 3.)

Defendant convincingly argues that 60 of 68 claims identified by Plaintiff either do not meet the class definition or were properly denied payment under Pennsylvania Supreme Court precedent, leaving only 8 potential class members.  (Doc. No. 105 at 6.)  In this regard, the key issue here is whether Defendant is liable for breach of contract by wrongfully denying certain claims.  (<u>See</u> Doc. No. 104 at 2.)  More specifically, Defendant argues that:

> [W]hether Progressive's denial was a breach of contract depends on whether the underlying fact pattern of the class member's claim mirrors those set forth in the Pennsylvania Supreme Court's decisions in <u>Rush</u> [upholding denial based on a household vehicle exclusion], <u>Mione</u> [upholding denial based on a regular use exclusion], <u>Craley</u> [upholding denial based on household vehicle exclusion] . . . [and] if a class member's claim mirrors [any of those] fact patterns, Progressive's denial was in conformance with binding Pennsylvania Supreme Court precedent and Progressive did not breach the insurance policy.

(Doc. No. 105 at 2, 5.)  Thus, the issue Plaintiff seeks to certify here is not whether certain insureds could sue Defendants, but whether certain denials of coverage were wrongful under stacking

---

[26]  It is unclear if Plaintiff inadvertently omitted potential plaintiffs whose claims were denied based on the stacking waiver.

requirements and the household/regular-use provision.  (See id. at 3; Doc. No. 75-1 at 17.)  But, as Defendants note, the insured's claims that were "properly denied under binding Pennsylvania Supreme Court precedent have no basis to re-open their UM/UIM claims."  (Doc. No. 105 at 4 n.3.)  As such, the fact patterns of many potential class members are different from Plaintiff's and the realistic number of potential plaintiffs in this case appears to be 8.

While the Third Circuit failed to set a minimum number of class members in Marcus, supra, the United States Supreme Court "has noted in dicta that a class of fifteen was 'too small to meet the numerosity requirement,' and leading treatises have recognized that 20 members is generally the floor."  Muse v. Holloway Credit Sols., LLC, 337 F.R.D. 80, 85 (E.D. Pa. 2020) (quoting Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n, 446 U.S. 318, 330 (1980)).  Here, given the variable fact pattern in play, 8 class members would be too small to support the certification of a class under Rule 23.

### c.    Joinder Is Practical With a Small Number of Plaintiffs

The Third Circuit has provided a non-exhaustive list of factors for a court to consider in deciding whether joinder would be impracticable including:  "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages."  Modafinil, 837 F.3d at 253.  Here, the insureds are all located in Pennsylvania, future claimants could be discerned based on whether and to what extent their fact patterns align with the pertinent Pennsylvania Supreme Court cases discussed supra, and the members would be seeking monetary damages.

Plaintiff asserts that it is unlikely that many class members would proceed individually but fails to support that contention.  (See Doc. No. 95 at 16.)  Plaintiff further argues judicial economy would be served by certifying the issue class because the discovery and trial proof regarding the

issue of liability would be identical for the class members.  (<u>See id.</u>)  In doing so, Plaintiff presumes that the "breach of contract claim will rise or fall on common proof," but fails to support this assertion with further detail beyond the 8 claims of potential class action members who have claims that mirror his own.  (<u>Id.</u> at 6.)  Moreover, with only 8 class members, this Court would not need to economize its resources.

What the <u>Modafinil</u> factors essentially hinge on, however, is the number of potential plaintiffs.  Plaintiff argues that the sheer number of members (68) makes joinder impractical, and Defendant argues the opposite:

> Given the small number of potential class members  . . . Plaintiff does not meet his burden to show that joinder is impracticable.  This is especially true given the highly individualized factual nature of each claim and the high dollar value at stake, which incentivizes class members to litigate their own claims.

(Doc. No. 86 at 13–14); <u>see also</u> <u>Marcus</u>, 687 F.3d at 594–95 (noting the numerosity requirement "prevents putative class [members], when [ ] joinder can be easily accomplished, from unnecessarily depriving members of a small class of their right to a day in court to adjudicate their own claims").  Because, after rigorous analysis, Defendant's estimate of the number of potential class members is more realistic, joinder would not be impractical.  Moreover, the 8 potential aggrieved members may wish to sue individually.  For all of these reasons, the numerosity requirement is not satisfied in this case.

### 2.  Rule 23(a)(2):  Commonality Is Not Satisfied

Fed. R. Civ. P. 23(a)(2) requires, for class certification, that "there are questions of law or fact common to the class."  The commonality requirement is satisfied where there are common questions of law and fact that will generate common answers.  "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class member[s].  For purposes of Rule 23(a)(2), even a single common question will do."  <u>Marcus</u>, 687 F.3d at 597 (quotation marks

and citations omitted). "[The] common contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350 (internal citations and quotations omitted).

Here, in arguing that commonality is met for the class issue, Plaintiff has identified the common question with a "common answer": Did Progressive breach the contract it issued to Plaintiff and members of the class by relying on the regular or household exclusion to deny UI/UIM coverage? (Doc. No. 75-1 at 17.) Plaintiff then cited to a number of cases outside the Third Circuit in which courts recognized commonality in cases dealing with standardized insurance contracts. (Id.)

Defendant counters with reasoning similar to the reasoning explained above regarding the numerosity requirement: the answer to Plaintiff's common question does not have a common answer because the propriety of Progressive's denial in each case depends on whether the facts fall into a pattern that has already been analyzed by the Pennsylvania Supreme Court. (See Doc. No. 86 at 13.)

First, Plaintiff identified at least 11 claims where a class member submitted a UM/UIM claim relating to an accident in an unlisted vehicle which did not have UM/UIM coverage. (See id. at 14; see also Doc. No. 88 at ¶ 5.) Under Mione, the denial based on those facts was proper, so the answer to Plaintiff's common question is "no." (Id.)

Second, Plaintiff identified at least 23 potential members whose claims related to an accident that occurred in a vehicle not listed in the insurance policy, which only covered one vehicle and the insured waived stacking. (See id. at 15; see also Doc. No. 88 at ¶ 6.) Under Craley, the denial was proper, and the answer to Plaintiff's common question is likewise "no." (Id.)

However, regarding other potential members whose claims align with the <u>Gallagher</u> or <u>Donovan</u> fact patterns, the answer to Plaintiff's common question could be "yes." (<u>Id.</u>) For example, if an insured signed the stacking waiver required under 75 Pa. Cons. Stat. §1738 but submitted a claim attempting to combine coverage limits from two of his own policies ("inter-policy" stacking) and either policy had a household/regular-use exclusion, that exclusion would be unenforceable under <u>Donovan</u>. And if an insured did not sign a stacking waiver, then he may have a claim for breach of contract under <u>Gallagher.</u>

But ultimately, Defendant makes a persuasive argument that the common question that Plaintiff wants to certify has different answers depending on the facts and applicable case law to each of the remaining 56 claims. This would preclude a finding of commonality under Rule 23(a)(2).

### 3. Rule 23(a)(3): Typicality Is Not Satisfied

In order for a plaintiff to certify a class, "the claims or defenses of the representative parties [must be] typical of the claim or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "Unlike the numerosity and commonality requirements, which evaluate the sufficiency of the class itself, the typicality requirement assesses the sufficiency of the named plaintiff." <u>Sanneman v. Chrysler Corp.</u>, 191 F.R.D. 441, 447 (E.D. Pa. 2000). "The concepts of typicality and commonality are closely related and often tend to merge." <u>Marcus</u>, 687 F.3d at 597. "Typicality, however, derives its independent legal significance from its ability to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." <u>Id.</u> at 598 (quotation marks and citation omitted). To determine whether a named plaintiff's "legal or factual position" is "markedly different" from other class members, the Third Circuit directs district courts to "consider the

attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class," focusing on the following:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;
>
> (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and
>
> (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

Id. (quoting In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 599 (3d Cir. 2009)). "A common thread running through the various components of typicality . . . is the interest in ensuring that the class representative's interests and incentives will be generally aligned with those of the class as a whole." In re Schering, 589 F.3d at 599. "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct. In re Nat'l Football League Players Concussion Injury Litig., 821 F.3d 410, 428 (3d Cir. 2016).

Here, Plaintiff claims that he is a typical representative of the class. He submits that each class member, like himself, contracted with Defendant for the same insurance policy and that Defendant breached the contract by using the household/regular-use exclusion to deny coverage, and that this is "the same liability question for all other class members." (Doc. No. 75-1 at 11.)

Defendant again highlights that Plaintiff's claim is not similar to other members of the class because while Plaintiff's case is similar to the fact pattern in Donovan, the facts of the cases for many of the other members are more similar to Rush and Mione. (Doc. No. 86 at 16; see, e.g., Doc. No. 88 at ¶¶ 4–23.) For example, Plaintiff identified several potential members whose claims related to an accident that occurred while they were in a work vehicle not owned by them but

available for their regular use and not listed on the policy. (See Doc. No. 88 at ¶ 4.) The insureds were denied coverage based on the regular-use exclusion, so under Rush, Progressive's denial of coverage was proper and the answer to Plaintiff's common question is "no." (Doc. No. 86 at 14.) However, in Plaintiff's fact pattern, he was not driving a work vehicle; he was driving his own motorcycle.

As such, Plaintiff's case is representative of his own case and the cases of the 7 other members who remain after the rigorous numerosity analysis above, but it does not appear that he is an adequate representative of the 60 other proposed members. Therefore, Plaintiff has not satisfied his burden of showing as to the other 60 claims that Plaintiff's claims are based on strongly similar legal theories or the same practice or course of conduct by Defendant. Accordingly, the typicality requirement is not met.

### 4.    Rule 23(a)(4):  Adequacy Is Not Satisfied

A named party can certify a class only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Like typicality, the adequacy requirement focuses on the class representative's relationship to the class as a whole. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). In this circuit, adequacy is determined by a two-prong test: "(1) . . . the experience and performance of class counsel; and (2) . . . the interests and incentives of the representative plaintiffs." Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 181 (3d Cir. 2012) (citation omitted).

In this case, Plaintiff argues that he is an adequate representative of the class because his interests align with members of the class and has no interests antagonistic to the class. (Doc. No.

75-1 at 19.)  Plaintiff also claims that his counsel is experienced in class actions involving insurance claims.  (Id.)

Defendant asserts that Plaintiff is not an adequate class representative because a conflict of interest arose between Plaintiff and the class when Plaintiff chose to remove the damages claim from the class action and proceed only on the issue of liability under Donovan.  (Doc. No. 86 at 17.)  According to Defendant, this created a risk that class litigation in this case could prejudice the class because it could be viewed as a waiver of compensatory damages.  (Id.)  "Pennsylvania law prohibits splitting a claim into multiple legal actions" because of the danger that it may result in a damages waiver of the unmade claims.  Arch v. Am. Tobacco Co., 175 F.R.D. 469, 479 (E.D. Pa. 1997).  This concern is obviated if each of the 8 remaining potential Plaintiffs pursue their own claims individually, either in separately filed cases or as joined Plaintiffs in this case.

Ultimately, given the risk of a decision on the issue of liability here may result in a waiver of damages for other plaintiffs, and given that the facts of each accident and coverage under each insurance policy may differ from Plaintiff's case, Plaintiff may not likely protect the interests of all of the proposed members of the class.  Thus, the adequacy requirement is not met.[27]

### D. Federal Rule of Civil Procedure 23(b)(3) Is Not Satisfied on the Liability Issue

In addition to meeting the requirements of Rule 23(a), the action must also qualify as one of the types of class actions described in Rule 23(b).  In this case, Plaintiff has moved for certification under subsection (b)(3), which requires:

> the Court [find] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods of fairly and efficiently adjudicating the controversy.

---

[27]  Whether counsel representing Plaintiff is experienced enough to act as class counsel has not been challenged in this case.  Consequently, there is no need to discuss it further.

Id. (emphasis added).  "The twin requirements of Rule 23(b)(3) are known as predominance and superiority."  In re Hydrogen Peroxide, 552 F.3d 305, 310 (3d Cir. 2008).

The predominance inquiry is driven by the interests of individual class members in controlling their own litigation, whereas the superiority analysis focuses on the advantages and disadvantages of using the class action device as compared to other litigation methods.  See Fed. R. Civ. P. 23(b)(3).  Each requirement will be discussed below.

### 1. Predominance: Common Questions of Fact and Law Do Not Predominate Over Questions Affecting Individual Members

Here, the questions of law or fact common to class members do not predominate over the many questions affecting only individual members.

 "To assess predominance, a court at the certification stage must examine each element of a legal claim 'through the prism' of Rule 23(b)(3)."  Marcus, 687 F.3d at 600 (citation omitted). The Third Circuit has addressed predominance under Rule 23(c)(4) as follows:

> Courts have disagreed over the extent to which the ability to certify issue classes alters the predominance requirement. Some appellate courts have viewed Rule 23(c)(4) as a "housekeeping rule" allowing common issues to be certified only when the cause of action, taken as a whole, meets the predominance requirement.[28] Others have allowed certification of issue classes even if common questions do not predominate for the cause of action as a whole.[29]

Gates, 655 F.3d at 272–73.  In Gates, town residents sued chemical companies for dumping wastewater nearby, resulting in carcinogenic air in their town.  Id. at 258.  Plaintiffs argued for certification under Rule 23(c)(4) as to liability only as an alternative in the event that the District Court found that the class could not be certified as to the whole case.  Id. at 272.  The Third Circuit

---

[28]  See Castano v. Am. Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996).

[29]  See In re Nassau County Strip Search Cases, 461 F.3d 219, 226 (2d Cir. 2006); Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 439 (4th Cir. 2003); Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

agreed with the District Court that resolution of the common questions in that case left significant and complex questions unanswered because the common issues were not divisible from the individual issues.  See id. at 273.  In finding that the residents failed to establish that common questions predominated in connection with their property damage claims, Gates held:

> Although many aspects of Plaintiffs' claims may be common questions, the parties agree that resolution of those questions leaves significant and complex questions unanswered, including questions relating to causation of contamination, extent of contamination, fact of damages, and amount of damages.  Although Plaintiffs invite the Court to "carve[ ] at the joints" of their property claims to resolve certain common issues in a class proceeding and leave claimant-specific issues to individual follow-on proceedings, this Court, mindful of the admonition that it is to consider the claims as a whole and not to manufacture predominance through the nimble use of such carving, declines to do so here.

Gates v. Rohm & Haas Co., 265 F.R.D. 208, 233–34 (E.D. Pa. 2010), aff'd, 655 F.3d 255 (3d Cir. 2011) (internal quotation marks and citations omitted).  Although the parties in this case do not agree that issue certification here would leave significant and complex questions unanswered, Defendant has convincingly highlighted the many unanswered questions on the large majority of claims.  Therefore, despite any similarities in the claims of the potential members, such as, for example, the insured's being covered under the Progressive Specialty Policy with or without stacking waivers and exclusions for household/regular-use of vehicles, this Court will likewise decline to "manufacture predominance" by "carving out" similarities given the variety of fact patterns because it would not fairly resolve the claims for each potential member.

### a.  This Case Does Not Turn on Interpreting Form Language

Here, Plaintiff argues that there is a very obvious common issue that predominates: whether Plaintiff's interpretation of Progressive's obligations under the terms of the insurance contract is the correct one.  (Doc. No. 75-1 at 21.)  In this regard, Plaintiff relies on Gillis v. Respond Power, LLC, which states that "claims involving the interpretation of standard form contracts are particularly well-suited for class treatment."  677 F. App'x 752, 756 (3d Cir. 2017).

36

But in denying that the form contract automatically creates predominance of common issues, Defendant relies upon <u>Craley</u>, <u>Erie</u>, and <u>Rush</u>, <u>Donovan</u>, and <u>Gallagher</u> to showcase that coverage under the same insurance contract depends on the facts of each case.  (<u>See</u> Doc. No. 86 at 21.)

### b.  Individualized Claims and Defenses Complicate the Liability Issue

Furthermore, as highlighted earlier, an analysis of the claims of each potential member is needed to determine if Defendant Progressive Specialty was liable for breach of contract.  Liability will turn on multiple facts, such as, for example:  whether a stacking waiver was signed, whether the policy or policies at issue covered multiple vehicles on the same policy or vehicles insured on separate policies, and whether the vehicle in the accident was a work vehicle or one used by other members of the insured's household.  Thus, the variability of these facts make the cases at issue here more suitable for individualized claims.

Despite the factual impediments here to certification of a class on the liability issue, Plaintiff contends this case is similar to <u>Drummond v. Progressive Specialty Ins. Co.</u> and similarly should be given Rule 23(b)(3) certification.  <u>See</u> No. CV 21-4479, 2023 WL 5181596, at *1 (E.D. Pa. Aug. 11, 2023).  In <u>Drummond</u>, the plaintiffs claimed Progressive breached their insurance contract by failing to pay them the cash value of their vehicles, which were involved in an accident and were deemed a total loss.  <u>See id.</u> at *1.  Liability turned on whether Progressive's use of a valuation process violated its contractual obligation to pay the insureds for their damaged vehicles. <u>See id.</u> at *9.  The court found the common answer "quite clear":  the use of [the valuation process] either did or did not violate the contract:

> [T]he putative plaintiffs demonstrate that all class members have been subjected to the same harm.  Here, all potential class members have received compensation from Progressive calculated in part through the application of [the valuation process]. Class-wide litigation could therefore generate common answers about whether Progressive breached its contract with the proposed class members.

<u>Id.</u> (internal quotation marks and citations omitted).

In <u>Drummond</u>, common proof could establish the propriety of the valuation process at issue for all class members, but here, the facts are more complex. (<u>See</u> <u>id</u>; Doc. 86 at 21.) As noted earlier, in this case the issue of liability will turn on the propriety of Progressive's denial of coverage as it relates to the application of the household or regular-use exclusion and whether a stacking waiver was signed. Within each category, the variation in fact patterns is complex and require individualized consideration.

Defendant distinguishes this case from <u>Drummond</u> by providing four reasons that illustrate the complexity of determining whether the insurance contract was breached here, rendering the claims more suitable for individual litigation.

First, Defendant submits that for each class member thirteen issues, some factual and some legal, must be analyzed to determine whether Progressive was liable for breach of contract:

- Whether the vehicle involved in the accident is listed on the Progressive auto policy. (<u>See</u>, <u>e.g.</u>, Doc. No. 88 at ¶¶ 17, 19, 22.)

- Whether the individual involved in the accident submitting the claim is an insured under the Progressive auto policy.

- Whether the insured is at fault for the accident (in part or in total). (<u>See</u>, <u>e.g.</u>, <u>id.</u> at ¶ 12.)

- Whether the vehicle involved in the accident has UM/UIM coverage. (<u>See</u> <u>id.</u> at ¶ 5; <u>Mione</u>.)

- Whether the Progressive auto policy pursuant to which the claim is being submitted has stacked UM/UIM coverage. (<u>See</u> <u>id.</u> ¶ 6; <u>Craley</u> and <u>Gallagher</u>.)

- Whether the insured owned the vehicle involved in the accident. (<u>See</u> <u>id.</u> at ¶ 4; <u>Rush</u>.)

- Whether another exclusion in the policy applies (<u>e.g.</u>, whether the insured was operating the vehicle to carry persons or property for a fee). (<u>See</u> <u>id.</u> at ¶¶ 4, 13 and Ex. A.)

- If the Progressive auto policy does not have stacked UM/UIM coverage, whether Progressive has a valid signed stacking waiver.

- Whether other insurance policies have priority of payment over the Progressive policy.

- Whether the insured's injuries were substantial enough to trigger the Progressive auto's UM/UIM coverage. See Gallagher v. Ohio Cas. Ins. Co., 598 F. App'x 59, 61 (3d Cir. 2015) ("[T]he insured 'will not be allowed underinsured motorist benefits unless [his or her] damages exceed the maximum liability coverage provided by the liability carriers of other drivers involved in the accident.'") (citation omitted); see also, id. ¶¶ 7, 8, 9, 11, 16, 19.

- If Progressive has a valid signed stacking waiver of UM/UIM coverage, whether the auto policy insurers more than one vehicle. See Donovan.

- Whether Progressive has unique defenses with respect to each insured's claim, such as waiver, release, payment, statute of limitations, collateral estoppel and/or equitable defenses. (See id. at ¶¶ 6(f), 9, 10, 14, 15, 20, 21.)

- Whether controlling Pennsylvania law supports the denial of coverage. See Craley, Mione, Donovan, Gallagher, Rush; see id. at ¶¶ 4–6, 13.

(Doc. No. 86 at 18–19.)  On these facts, and under the relevant holdings of the Pennsylvania Supreme Court discussed earlier, these questions cannot be adequately answered through common proof, but would require individualized analysis.

Second, Defendant argues that their defenses to each class member's claim will predominate, such as:  (1) the injuries did not exceed the available coverages;[30] (2) the claim was denied for reasons other than or in addition to the regular use/household use exclusion;[31] or (3) the claim was already litigated or settled.[32]  (Id. at 20)  Defendant relies on In re LifeUSA Holding, which noted that district courts may decline certification where "individualized claims and individualized defenses" prevent predominance and superiority.  See 242 F.3d 136, 149 (3d Cir. 2001).

---

[30]  (See Doc. No. 88 at ¶¶ 7, 8, 11, 16.)

[31]  (See id. at ¶ 12.)

[32]  (See id. at ¶¶ 14, 21.)  Defendant also submits that collateral estoppel applies at least to one claim.  (Doc. No. 86 at 20; id. at ¶ 6(f).)

In re LifeUSA Holding involved alleged fraudulent misrepresentations made before the potential class members purchased annuity contracts.  See id.  While the Third Circuit vacated class certification on the theory that the district court should have instead considered alleged post-sale misrepresentations on which the plaintiffs' claims were based, the court made it clear that "due to individualized claims and individualized defenses, and the requirements of predominance [and] superiority," where there is doubt as to whether some claims of potential members would have grounds for relief, class certification is improper.  Id.  Similarly, here, while Defendant has agreed that 8 potential members may substantiate their claims and be entitled to relief, Plaintiff has not shown that the fact patterns of the claims of the balance of the members in Plaintiff's proposed class would not fall within the pertinent decisions of the Pennsylvania Supreme Court, in which the court upheld the denial of claims.  As such, there would be a legal basis for the denial of the claims, and the denials would not constitute breach of contract.

Finally, Defendant points out that some potential members Plaintiff seeks to include in the class were not harmed.  (Doc. 86 at 22; see Doc. 88 at ¶¶ 7, 8, 11, 16, 19.)  A court in this district noted: "To the extent that a proposed class contains uninjured class members, plaintiffs must provide a reasonable and workable method for differentiating between uninjured class members and injured class members so that uninjured class members do not recover damages."  In re Niaspan Antitrust Litig., 464 F. Supp. 3d 678, 715 (E.D. Pa. 2020).  Here, Plaintiff has not provided a method.  For this reason and for all of the reasons above, the predominance requirement has not been met here.

**2.    Superiority:  A Class Action Is Not a Superior Method
of Litigating This Case**

Because potential class members have a reason to control how each of their own cases are handled, and because a class action would not be any more manageable than individual

adjudication, class certification is not the superior method to adjudicate this case fairly and efficiently.  In making the superiority determination, the following factors are pertinent:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Plaintiff argues that Rule 23(c)(4) certification is superior because it allows the Court to resolve the issue of liability for all class members in a single proceeding and protects Defendant from inconsistent adjudications.  (Doc. No. 75-1 at 25.)  But Defendant argues that inconsistent adjudications—for the 8 remaining claims versus the 60 other proposed claims—may result, making class certification anything but superior on these facts.  (See Doc. 86 at 22.)

Plaintiff asserts that it is unlikely that many class members will proceed individually but does not give a reason for this assertion.  (Doc. No. 75-1 at 26.)  Plaintiff points to the "inefficiency of identical discovery and trial proof regarding the liability issue," but does not detail how the discovery or proof would be identical.  (Id.)  Defendant counters that Rule 23(c)(4) certification is not superior because class members are highly incentivized to bring their own actions because the damages may be "tens [or] even hundreds of thousands of dollars depending on the coverage limits in the applicable policies."  (Doc. No. 86 at 22.)  Defendant also claims that the class members have their own attorneys, which makes class counsel unnecessary.[33]  (Id.)  But, most importantly, Defendant advances a strong argument that the evidence is not similar for each class member, requiring individualized "mini-trials" not just for damages, but also for liability.  (Id.)

---

[33]   It is unclear whether the individual potential class members have retained their own counsel.

Thus, in considering the four factors noted above under Fed. R. Civ. P. 23(b)(3), it is evident first that the class members in this case have a significant interest in "individually controlling" their own claim because Progressive's liability may turn on any of the thirteen (13) factors that distinguish the potential members. Further, Defendant notes, and Plaintiff concedes, that "even if the class is certified and Plaintiff prevails on the merits, each class member will still be required to bring an additional individual suit to recover damages." (Doc. No. 86 at 18; <u>see</u> Doc. No. 75-1 at 31.) Plaintiff submits that where appropriate "the court may 'establish procedures by which the remaining individualized issues concerning fact-of-injury, proximate causation, and extent of damages can be resolved.'" (Doc. No. 75-1 at 24 (citing <u>Martin v. Behr Dayton Thermal Products LLC</u>, 896 F.3d 405, 410 (7th Cir. 2018).) But if "mini-trials" are required in order to resolve all of the individualized claims and defenses, class certification is not superior.

Second, there is no evidence that any class member has already initiated litigation concerning this controversy, so that factor is neutral. Third, while it is desirable to concentrate the litigation of this claim in Pennsylvania, since the related accidents took place here and the cases turn on differing Pennsylvania state law precedent, there is no reason that the 8 members must jointly pursue their cases before a single Pennsylvania court. This factor also does not favor a finding of superiority.

Finally, while some class actions pose few, if any, difficulties with respect to management, this action raises far too many factual and legal differences between claims for it to be any more manageable as a class action than otherwise. Given that three factors favor finding no superiority, a class action is not the superior means of adjudicating this controversy.

### E.    Application of the <u>Gates</u> Factors Shows an Issue Class Is Inappropriate

<u>Gates v. Rohm & Haas Co.</u> provided a non-exclusive list of factors relevant to considering whether the certification of a Rule 23(c)(4) issue class is appropriate. 255 F.3d 255, 272 (3d. Cir.

2011) (internal quotation marks and citation omitted).  The factors are:  (1) the type of claim and issue(s) in question; (2) the overall complexity of the case; (3) the efficiencies to be gained by granting pretrial certification in light of realistic procedural alternatives; (4) the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue from other issues concerning liability or remedy; (5) the impact partial certification would have on statutory rights of both the class members and the defendant(s); (6) the post-trial preclusive effect or lack thereof that resolution of the proposed issue class will have; (7) the repercussions certification of an issue class will have on the effectiveness and fairness of resolution of remaining issues; (8) the impact individual proceedings may have upon one another, including whether remedies are indivisible such that granting or not granting relief to any claimant as a pretrial matter determines the claims of others; and (9) and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to re-examine evidence and findings from resolution of the common issue(s).  Id. at 273.

Plaintiff argues the Gates factors are met in the following manner:  (1) breach of a uniform insurance contract is perfect for issue certification class treatment; (2) despite the complexities of the case, universal issues of law and fact apply to all members, and (3) proceeding as a class would make litigation most efficient, whereas individual claims would be inefficient; (4) only Pennsylvania law applies so there are no choice of law issues; (5) and (6) no evidence supports a negative constitutional or statutory impact of class action on parties; (7) no evidence supports repercussion on the effectiveness and fairness of resolution of remaining issues; (8) class action will not have an impact on other remedies, as the following trials will focus on damages; and (9)

evidence for the issue class would be separate from evidence presented at subsequent proceedings on the issue of damages; the same evidence would not be reconsidered.  (Doc. No. 75-1 at 27–33.)

Defendant argues that even if Plaintiff satisfied Rule 23(a) and (b)(3), the Rule 23(c)(4) issue class still would fail because the Gates factors are not met.  First, Defendant reiterates that a finding on liability requires individualized, fact-specific inquiries.  (Doc. No. 86 at 23.)  Defendant also argues that whether an injury was caused by the accident requires a particularized analysis.  (Id. at 23–24.)  Thus, there are complexities here that need to be addressed in individual cases.  Defendant also notes that Plaintiff failed to define the scope of the liability-only trial, and more importantly, that the scope has already been defined to a great extent by the Pennsylvania Supreme Court in the decisions described above.  (Id. at 24.)

Most importantly, because there are several factual and legal variables as noted above that make the application of the insurance contract at issue here not conform to a clear or uniform analysis in each case, and because universal issues of law and fact do not necessarily apply to all potential members, these factors weigh against certification.  Furthermore, Plaintiff has not demonstrated that certification of this issue class would be more efficient than the 8 remaining potential members proceeding individually on both liability and damages.  While it would save time and resources to decide the issue of liability on all of the claims now, Defendant has raised valid concerns about the fairness of making such a determination where the application of the law to the facts varies so widely among the claims.   And while it is true that only Pennsylvania substantive law applies and that no evidence supports a negative constitutional or statutory impact of class action litigation on the parties, the evidence presented on the liability issue is so complex as to risk the need to carefully re-examine evidence and findings for each individual case.  On balance, the Gates factors weigh in favor of denying class certification on the issue of liability.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification (Doc. No. 37) will be denied.  An appropriate Order follows.